FILED - USDC -NH
2026 MAR 25 PM 1:56

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.

DARIS RAFAEL MELO VITTINI,

Defendant.

No. ~~2502~~ 26-cr-18-PB-AJ-01

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America by attorney Erin Creegan, United States Attorney for the District of New Hampshire, and the defendant, Daris Rafael Melo Vittini, and the defendant's attorney, Stanley W. Norkunas, Esquire, enter into the following Plea Agreement:

### 1.    The Plea and the Offense

The defendant agrees to plead guilty to Count 1 of the Information, charging him with possession with intent to distribute controlled substances, namely, 28 grams and more of a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, and 40 grams and more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, both Schedule II controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(B)(vi).

In exchange for the defendant's guilty plea, the United States agrees to the

sentencing stipulations identified in Section 6 of this Agreement.

2.    **The Statute and Elements of the Offense**

Title 21, United States Code, Section 841(a)(1) provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally to . . . possess with intent to distribute. . . a controlled substance."

The defendant understands that the offense of possession with intent to distribute controlled substances has the following elements:

First:      That on June 30, 2025, the defendant possessed crack cocaine and fentanyl, either actually or constructively;

Second:     That the defendant did so with a specific intent to distribute the crack cocaine and fentanyl over which he had actual or constructive possession; and

Third:      That the defendant did so knowingly and intentionally.

Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2024 Revisions, Instruction 4.21.841(a)(1)A, https://www.med.uscourts.gov/sites/med/files/crpjiLinks.pdf.

Further, to trigger the enhanced maximum penalty identified in 21 U.S.C. § 841(b)(1)(B), the United States must prove beyond a reasonable doubt that the weight of crack cocaine (cocaine base) possessed by the defendant was 28 grams and more, or that the weight of fentanyl possessed by the defendant was 40 grams and more.

3.    **Offense Conduct**

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

On June 30, 2025, an officer with the Manchester, New Hampshire Police

Department observed a car driving around Manchester which had been used by a Massachusetts-based drug trafficking organization as a "runner" car for delivering drugs. Police followed the car and saw it pull to the roadside to pick up a passenger for a brief moment before that passenger exited the car and the car drove away. Police knew this type of activity, brief encounters where an individual enters and exits a car for no apparent reason, especially in a known "runner" car previously involved in narcotics trafficking, were consistent with hand-to-hand drug transactions.

Police continued following the runner car until it committed a pair of traffic violations, namely, failing to use a turn signal and lacking a front license plate. Based on those infractions and the suspected drug activity, police stopped the car and removed the defendant, who was the driver and sole occupant inside. An officer detected a bulge in the defendant's jacket during a pat-frisk. The defendant identified himself with a Dominican identification card and did not speak English. Police used an over-the-phone translator to communicate with the defendant, who eventually verbally consented to a search of his person. During that consent search, an officer found inside the defendant's jacket two plastic bottles which contained multiple small tied-off plastic baggies of drugs that were pre-packaged for sale. In one bottle were 32 baggies of fentanyl weighing 36.60 grams. In the other bottle were 27 baggies of crack cocaine weighing 27.68 grams. Also inside that bottle was one baggie of powder cocaine weighing 1.19 grams.

Police then ran a drug-sniffing dog around the runner car which the defendant had been driving and the dog alerted to the presence of the odor of narcotics

emanating from inside. Police then searched the car and found a "hide" located in the center console area near the gear shift. Hides are used by drug traffickers to conceal contraband like illegal drugs and drug proceeds. Inside the hide was a Ziploc-style bag containing approximately $1,500 cash in 100-, 50-, and 20-dollar denominations. Also inside the hide was another plastic bottle, similar to the bottles removed from the defendant's jacket, which contained 39 baggies of fentanyl weighing 101.8 grams. Police also removed from the hide a ball of metal foil, which contained 20 baggies of crack cocaine weighing 8.46 grams. The defendant's knowing possession of these quantities of crack cocaine, fentanyl, and cash, the manner in which those drugs and cash were packaged and concealed both on the defendant's person and inside a known runner car, all demonstrate the defendant's specific intent to distribute illegal controlled substances.

4.    **Penalties, Special Assessment, and Restitution**

The defendant understands that the penalties for the offense are:

A.    A maximum prison term of 40 years (21 U.S.C. §§ 841(b)(1)(B)(iii) and 841(b)(1)(B)(vi));

B.    A maximum fine of $5,000,000 (21 U.S.C. § 841(b)(1)(B));

C.    A term of supervised release of at least 4 years (21 U.S.C. § 841(b)(1)(B)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.    A mandatory special assessment of $100 at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

Page 4 of 14

5.    <u>**Sentencing and Application of the Sentencing Guidelines**</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6.    <u>**Sentencing Stipulations and Agreements**</u>

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

A.    The United States will recommend that the defendant be sentenced at the bottom of the applicable advisory sentencing guidelines range as determined by the Court.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.    **Acceptance of Responsibility**

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.    Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an

additional one level pursuant to U.S.S.G. § 3E1.1(b)

8.    **Waiver of Trial Rights and Consequences of Plea**

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.    **Acknowledgement of Guilty; Voluntariness of Plea**

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

## 10.   Scope of Agreement

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

## 11.   Collateral Consequences

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which

would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

## 12. Satisfaction of Federal Criminal Liability; Breach

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the

United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13.  **Waivers**

A.    Appeal

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.    Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241

or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.  His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.  The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.    Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

D.    Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.    **No Other Promises**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.    **Final Binding Agreement**

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.    **Agreement Provisions Not Severable**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN
United States Attorney

Date: _3/25/2026_          By: _____

Mike Shannon (BBO No. 685456)
Assistant United States Attorney

Page 13 of 14

The defendant, Daris Rafael Melo Vittini, certifies that he has read this 14-page Plea Agreement and that he fully understands and accepts its terms.

Date: _3/10/2026_                    _Daris melo_
                                     Daris Rafael Melo Vittini, Defendant

I have read and explained this 14-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _3/10/2026_ .                  _____
                                     Stanely W. Norkunas, Esquire
                                     Attorney for Daris Rafael Melo Vittini